IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00034-CR

 

Anthony Petruccelli,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 82nd District Court

Falls County, Texas

Trial Court No. 7747

 



Opinion



 








        Anthony Petruccelli was convicted of the aggravated
assault of his wife, Carol.  He was sentenced to seventy years’ confinement.  He
argues on appeal that (1) the trial court erred in admitting and publishing to
the jury in the guilt/innocence phase of the trial a “day in the life” video
depicting Carol’s activities at a rehabilitation facility; (2) there is legally
insufficient evidence to prove Petruccelli’s prior conviction; (3) there is
legally insufficient evidence to prove that his hands were deadly weapons; and
(4) the trial court erred in admitting prejudicial photographs of Carol in the
hospital.  We affirm.

Background

          On an August morning at 9:15am, Everett
Platt, Petruccelli’s neighbor, noticed that the rear window of Petruccelli’s
truck was smashed.  Platt stopped and asked Petruccelli what happened to his
window.  Petruccelli stated that he threw a pipe into the back of his truck,
but it bounced up and hit the rear window.  Platt inquired about Petruccelli’s
wife, Carol, and he replied that “the bitch is in the bedroom passed out, drunk
on the bed.”  He explained that he found Carol drunk at a bar last night,
brought her home, and that he may have “backhanded” her.  

          At 10:30am, Platt received a call from
Petruccelli who was worried that he could not wake Carol up.  He said that she
was making gurgling sounds and asked Platt what he should do.  Platt told
Petruccelli to take Carol to a hospital.  At the same time, the Falls county
Sheriff’s Department received a 9-1-1 call, but all that could be heard was a
beeping noise.  After tracing the call to Petruccelli, Sheriff Jerry Cowin went
to investigate.  Petruccelli met Cowin at the front door and told him that
everything was alright, and that he had just misdialed.  Cowin left.  

          At noon, Platt drove by Petruccelli’s
house.  He talked to Petruccelli who again expressed concern over Carol’s
condition, that she continued to make noises, and that she would not wake up.  Again,
Platt told him to take Carol to the hospital.  Petruccelli finally agreed and asked
Platt for his help in getting her to his truck.  Platt followed Petruccelli into
the house where he saw Carol laying half on the bed and half on the floor with
bruises covering her face, eyes, and shoulders.  As they were carrying her limp
body to the truck, Platt heard Petruccelli say “Oh baby, look what I’ve done to
you.”  

          At the hospital, Carol was listed in
critical condition.  Her head and body were covered in bruises.  She suffered
severe head trauma, causing her to have problems with her memory, her thought
processes, her speech, and her balance.  She also lost most of her vision.  Her
injuries required that she be placed in a rehabilitation facility.  

          While at the hospital, Petruccelli
told Platt, several medical professionals, and police officers that he did or
might have slapped Carol around a few times, backhanded her, hit her, or accidentally
hit her.  Subsequently, Petruccelli was charged with aggravated assault.

          Finding that he used his hands as a
deadly weapon, a jury found Petruccelli guilty of aggravated assault.  In the
punishment phase of the trial, it was shown that Petruccelli had a history of
beating his wife and that he had a prior felony conviction for assault and
armed robbery.  Petruccelli was sentenced to seventy years’ confinement.   

Admission of Evidence - The Photographs

          Petruccelli argues in his fourth issue
that the trial court erred in admitting photographs of Carol in the hospital
because the probative value of the photographs is substantially outweighed by the
danger of unfair prejudice.  

          We review a court’s decision to admit
evidence for an abuse of discretion.  Chamberlain v. State, 998 S.W.2d
230, 237 (Tex. Crim. App. 1999); Gipson v. State, 82 S.W.3d 715, 721 (Tex. App.—Waco 2002, no pet.).  Under Rule 403, a trial court may exclude relevant evidence
“if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.” 
Tex. R. Evid. 403.  When conducting
a Rule 403 analysis, we look to four non-exclusive factors: (1) the probative
value of the evidence; (2) the potential to impress the jury in some
irrational, yet indelible, way; (3) the time needed to develop the evidence;
and (4) the proponent’s need for the evidence.  Erazo v. State, 144
S.W.3d 487, 489 (Tex. Crim. App. 2004) (citing Montgomery v. State, 810
S.W.2d 372, 389-90 (Tex. Crim. App. 1990)).  

          Six 14 by 24 inch photographs and four
4 by 6 inch photographs were admitted into evidence.  They all portray Carol
unconscious in her hospital bed, shortly after she was admitted.  Most portray
her nude in various positions in order to adequately display the extent of her
injuries.  Bruises on her arms, breasts, back, buttocks, thighs, and knees are
clearly visible along with standard hospital equipment.  Also, some pictures depict
a close-up of Carol’s face showing bruising around her eyes, a cervical collar,
and various tubes entering her mouth and nose.  

          The State argues that the probative
value of this evidence is not outweighed by its unfairly prejudicial effect
because proof of serious bodily injury is an element of the offense of
aggravated assault.  Tex. Pen. Code Ann.
§ 22.02(a)(1) (Vernon 2003).  While it is true that the State has the burden to
prove serious bodily injury beyond a reasonable doubt, Petruccelli stipulated
that there was serious bodily injury.  Therefore in this respect, the photographs
have limited probative value.

          However, one of Petruccelli’s
defensive theories was that Carol received her injuries by twice falling out of
his moving truck.  The State’s expert witnesses emphatically denied that Carol’s
injuries were of the sort typically received when a person falls out of a
moving vehicle.  They explained that if Petruccelli’s theory were true, Carol
should have numerous cuts and abrasions usually described as “road rash,” and
they referred to Carol’s hospital photographs to demonstrate the absence of
road rash on Carol’s body.  Thus these photographs are directly relevant and
probative to counter the defense’s theory, and the State’s need for this
evidence is clear.  See Montgomery, 810 S.W.2d at 387-88 (holding
evidence is admissible to rebut a defensive theory); Richards v. State,
54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (holding
that despite the defendant’s stipulation to the cause of death, photographs were
probative to prove intent).  

          Because the photographs are genuinely
helpful to the jury in making its decision, the photographs are admissible
unless the emotional and prejudicial impact of the pictures substantially
outweighs their helpfulness.  Erazo, 144 S.W.3d at 490.  We also
consider “the number of photographs, the size, whether they are in color or are
black and white, whether they are gruesome, whether any bodies are clothed or
naked, and whether the body has been altered by autopsy.”  Id. at
489.  While some of the photographs are fairly large, they number only ten, and
none of them portray blood or bleeding wounds.  The photographs show a very
bruised woman, but they are certainly not so gruesome as to impress the jury in
some irrational, yet indelible way.  Id.  Nor are they so appalling that
a juror of normal sensitivity would find it difficult rationally deciding the
critical issues of the case after viewing them.  See Purtell v. State,
761 S.W.2d 360, 370-71 (Tex. Crim. App. 1988).  Therefore, we find that the
trial court did not abuse its discretion by admitting the photographs.  We
overrule Petruccelli’s fourth issue.

Admission of Evidence - The Videotape

          In his first issue, Petruccelli argues
that the trial court erred by admitting in evidence a videotape demonstrating
the daily activities and treatment of Carol at a rehabilitation facility. 
Specifically, Petruccelli argues that the videotape is victim-impact evidence
that is inadmissible during the guilt/innocence phase of a criminal trial. 
Further, he argues that, even if found not to be victim-impact evidence, the
videotape is inadmissible because its probative value is substantially
outweighed by the danger of unfair prejudice.  

          Before analysis, we must begin with a
description of the content of the videotape.  The tape is approximately 35
minutes long and consists of three sections: Carol walking in the facility; Carol
with her memory specialist; and Carol with her occupational therapist.  

          In the first section, Carol is seen
walking through the rehabilitation facility, which is decorated for Christmas. 
She has trouble with her balance, is using a walker, and has someone holding
her arm to guide her.  At one point, Carol asks about a particular person named
Wendy.  The person guiding her replies that Wendy is holding the camera.  Carol
attempts to find Wendy by walking straight up to the camera until she brushes
her nose against the lens, all the while repeating with a smile, “I can’t see
you.  Where is she?”

          Next Carol is seen sitting at a table
next to a window with her memory specialist sitting opposite her.  She is shown
an array of photographs of her children and her grandchildren.  Carol is asked
to identify the people in the pictures, but she cannot and frequently holds the
pictures upside down while guessing at what they show.  Frustrated, Carol
states that she will see the pictures better tomorrow.  When asked why, she
replies, “I’m going to pray tonight that God will let me see.  God’s going to
help me see.”  Then Carol asks if she can take the pictures back to her room so
that she can see her kids in the daylight.  The therapist answers that it is
daylight, and points to the window.  Carol replies, “No, it’s dark.”  When
asked, she does not remember the year, day of the week, or month, though she
was told this information earlier.  Nor does she remember how she received her
injuries.  At different times she states that she slipped and fell, or had a
stroke.

          Next Carol is seen in her room at the
facility.  An occupational therapist leads Carol around the room by a belt at
Carol’s waist.  She guides Carol in counting the steps to her closet and the
bathroom, and she teaches Carol how to brush her teeth and put on her shoes. 
At one point, Carol attempts for approximately five minutes to put on a sock. 
Unable to do so, she gives up and the therapist puts the sock on for her.   

          The videotape was published to the
jury in its entirety during the guilt/innocence phase of the trial[1],
and was later played to the jury without sound during the State’s closing
argument while the State urged the jury to remember Carol when they debated
their verdict.

          Outside of the context of homicide cases,[2]
victim-impact evidence is generally defined as evidence regarding “the physical
or psychological effect of the crime on the victims themselves.”  Lane v.
State, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991); see Matchett v.
State, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996); DeLaure v. State,
102 S.W.3d 388, 403 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d); see
also Tex. Code Crim. Proc. Ann.
Art. 56.03 (Vernon 2002).  

            Although the Court of Criminal Appeals
has held that a victim’s medical records or a doctor’s testimony concerning the
technical procedures required in caring for the victim are not victim-impact
evidence, we find that this evidence is distinguishable.  See Garcia v.
State, 126 S.W.3d 921, 929 (Tex. Crim. App. 2004); Mathis v. State,
67 S.W.3d 918, 928 (Tex. Crim. App. 2002).  The videotape does not consist
solely of technical medical information as communicated by a third party or as
seen on paper.  Rather, it is a portrayal of not only Carol’s physical therapy,
but also of her emotional and psychological state of mind as she struggles with
daily living.  While we hesitate to label the videotape a “day in the life”
video, sometimes found in civil cases[3],
we note that the video does give an impression of what Carol’s day to day life
must be like.  The video portrays the physical and emotional effect the crime
of aggravated assault had upon Carol, and therefore constitutes victim-impact
evidence.  Nonetheless, regardless of its characterization, we review this
evidence under a Rule 403 analysis using the non-exclusive factors referred to
above.  Erazo, 144 S.W.3d at 489.

          Victim-impact evidence is generally
not admissible in the guilt/innocence phase of the trial, but can be admitted
in the punishment phase when that evidence has some bearing on the defendant’s
personal responsibility and moral culpability.  Salazar v. State, 90
S.W.3d 330, 335 (Tex. Crim. App. 2002).  However, the characterization of this
evidence as victim-impact evidence does not necessarily preclude its admission
in the guilt/innocence phase, because this evidence may also be characterized
as evidence necessary to prove an element of the offense.  

          The State argues that the videotape is
necessary to prove serious bodily injury, an element of the offense of aggravated
assault, as stated above.  Tex. Pen.
Code §22.02(a)(1).  Yet, as explained, Petruccelli stipulated to serious
bodily injury.  And while the photographs are probative to rebut the defensive
theory that Carol sustained her injuries while falling out of a moving vehicle,
the videotape does not rebut this theory or add anything meaningful to the
issue.  Therefore, the probative value of the evidence is minimal.  Also, given
the admission of the photographs of Carol in the hospital, the State’s need for
the evidence is slight.  The only possible reasons for the admission is to
prove serious bodily injury or to inflame the minds of the jury.  The former
was stipulated to, and the latter is not acceptable under the Rules of Evidence
if offered solely for that reason.  Erazo, 144 S.W.3d at 489-90.

          Miller-El v. State, is directly
on point.  Miller-El v. State, 782 S.W.2d 892 (Tex. Crim. App. 1990).  In
Miller-El, the victim was shot in the spinal chord by the defendant.  Id. at 894.  During the punishment phase of the trial, the victim’s doctor
testified concerning the “special needs” the victim would require for the rest
of his life due to the seriousness of his injury.  Id.  The State argued
that this evidence was admissible in the guilt/innocence phase because it was
probative of the defendant’s intent to kill the victim, and the nature of the
victim’s injuries.  Id. at 895.  Therefore, the State argued, the
evidence should be admissible in the punishment phase also.  Id.  The
Court of Criminal Appeals disagreed.  They found that while the bare facts of
the victim’s paralysis was admissible in the guilt/innocence phase, “the victim’s
future hardship as a paraplegic [did not have] any tendency to make more or
less probable the existence of any fact of consequence at the guilt stage of
trial.”  Id.

          The videotape in question is highly
prejudicial.  And, while relevant and probative in the punishment phase of the
trial, its contains no information that would have any tendency to make more or
less probable the existence of any fact of consequence at the guilt stage of
trial.  Therefore the videotape was inadmissible in the guilt/innocence phase
of the trial.  

          Further, we note a point of concern. 
When this type of evidence is being offered in the punishment phase, judges are
cautioned to place appropriate limits on the amount, kind, and source of
victim-impact evidence.  Salazar, 90 S.W.3d at 336 (citing Mosley v.
State, 983 S.W.2d 249, 262-63 (Tex. Crim. App. 1998)).  The Court of Criminal
Appeals requires heightened judicial supervision of this type of evidence in
the punishment phase.  Salazar, 90 S.W.3d at 336.  Most assuredly, the
same supervision applies in the guilt/innocence phase.  We also find it
disconcerting that there is no indication that the trial court viewed the
videotape before admitting it into evidence.  “It is equally difficult for a
trial judge to weigh the probative value against the potentially unfair
prejudice of a particular item of evidence without first reviewing it.”  Id. at 336-37.

          For the foregoing reasons, we find
that the trial court erred by admitting the videotape in evidence during the
guilt/innocence phase of trial.  

Harm Analysis

          Having found error, we consider the
harm, if any, caused by the admission of the tape.  We will disregard any error
that does not affect a substantial right of the defendant.  Tex. R. App. P. 44.2(b); Haynes v.
State, 85 S.W.3d 855, 859 n.4 (Tex. App.—Waco 2002, pet. ref’d).  “A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury’s verdict.”  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)). 
We do not reverse if, “after examining the record as [a] whole, [we have] fair
assurance that the error did not influence the jury, or had but a slight
effect.”  Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see
also Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). 
The reviewing court should consider everything in the record, including all the
evidence admitted, the arguments, and voir dire.  Motilla v. State, 78
S.W.3d 352, 358 (Tex. Crim. App. 2002).  The strength of the evidence of guilt,
especially if it is overwhelming, is a factor to be considered.  Id. at 357-58; Haynes, 85 S.W.3d at 859 n.4.  However, if there are “grave
doubts” about whether the error did not effect the outcome, then the error is
treated as if it did effect the outcome.  Thomas v. State, 137 S.W.3d
792, 796 (Tex. App.—Waco 2004, no pet.) (citing Fowler v. State, 958
S.W.2d 853, 865 (Tex. App.—Waco 1997), aff’d, 991 S.W.2d 258 (Tex. Crim.
App. 1999)).

          After examining the evidence as a
whole, we conclude that the admission of the videotape had only a slight effect
on the jury.  Johnson, 967 S.W.2d at 417; Castillo, 910 S.W.2d at
127-28; Garcia, 827 S.W.2d at 30.  The record reveals numerous
admissions from Petruccelli, including a signed statement, that he hit Carol.  This,
along with the medical testimony that Carol’s injuries were caused by multiple
impacts consistent with being beaten, is more than enough evidence of guilt to
render the erroneous admission of the videotape harmless.  Motilla, 78
S.W.3d at 357-58.  While we note that the State emphasized the videotape during
closing argument, it was for a short period of time and without audio.  Though
a close question, we cannot say that we are in “grave doubt” about whether the
error affected the outcome.  Thomas, 137 S.W.3d at 796.  Given the
strength of the evidence of guilt, we find the erroneous admission of the
videotape harmless.  Motilla, 78 S.W.3d at 357-58.  Accordingly, we
overrule Petruccelli’s first issue.




 Insufficiency of the Evidence - Deadly
Weapon

          Petruccelli argues in his third issue
that there is factually insufficient evidence to prove that he used or
exhibited his hands as deadly weapons capable of causing death or serious
bodily injury.  

          In conducting a factual sufficiency
review, we “consider[ ] all of the evidence in a neutral light” and determine
whether the factfinder was “rationally justified in finding guilt beyond a
reasonable doubt.”  Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004); Davis v. State, 147 S.W.3d 554, 556
(Tex. App.—Waco 2004, no pet.).

          [T]here are two ways
in which the evidence may be [factually] insufficient.  First, when considered
by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt.  Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict.  Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met.

 

Zuniga,
144 S.W.3d at 484-85.

          A person commits the felony offense of
aggravated assault if he commits assault and (1) causes serious bodily injury
to another, or (2) uses or exhibits a deadly weapon during the commission of
the assault.  Tex. Pen. Code Ann.
§ 22.02(a) (Vernon 2003).  A deadly weapon is anything manifestly designed,
made, or adapted for the purposes of inflicting serious bodily injury or
anything that, in the manner of its use or intended use, is capable of causing
death or serious bodily injury.  Tex.
Pen. Code Ann. § 1.07(a)(17)(A), (B) (Vernon 2003).  

          Petruccelli’s indictment alleged that
his hands constituted deadly weapons.  Body parts, such as hands and knees, may
be deadly weapons based on their manner of use or intended use and their
capacity to produce death or serious bodily injury.  Turner v. State,
664 S.W.2d 86, 90 (Tex. Crim. App. [Panel Op.] 1983); Vela v. State, No.
13-03-102-CR, 2004 WL 1795314, *8 (Tex. App.—Corpus Christi 2004, no pet.).  To
determine whether something is a deadly weapon, the jury may consider all the
surrounding facts, including the defendant’s words.  Blain v. State, 647
S.W.2d 293, 294 (Tex. Crim. App. 1983); Vela, 2004 WL 1795314 at *8. 
The State does not have to prove that the complainant actually sustained
serious bodily injury for the alleged weapon to be a deadly weapon.  Jefferson v. State, 974 S.W.2d 887, 892 (Tex. App.—Austin 1998, no pet.). 
The State need prove only that the hands were capable of causing serious bodily
injury in the way they were used or intended to be used.  Hill v. State,
913 S.W.2d 581, 584 (Tex. Crim. App. 1996); Jefferson, 974 S.W.2d at
892; Vela, 2004 WL 1795314 at *8.

          Petruccelli made numerous admissions
that he hit Carol.  This evidence, coupled with medical testimony that Carol’s
injuries were consistent with being beaten multiple times with someone’s hands,
constitutes factually sufficient evidence.  Vela, 2004 WL 1795314 at
*8.  Looking at the evidence from a neutral viewpoint, we find that the jury
was rationally justified in finding that Petruccelli used or exhibited his
hands as deadly weapons.  Zuniga, 144 S.W.3d at 484.  Accordingly, we
overrule Petruccelli’s third issue.

Insufficiency of the Evidence - Prior Conviction

          Petruccelli argues in his second issue
that there is legally insufficient evidence to prove his prior conviction
because the conviction was not final.[4]

          In reviewing the legal sufficiency of
the evidence, we view all the evidence in the light most favorable to the
verdict.  Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000).  The critical inquiry is whether, after so viewing the evidence, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Id.; McDuff v. State, 939 S.W.2d 607,
614 (Tex. Crim. App. 1997).

          The trial court admitted a penitentiary
packet from the Commonwealth of Massachusetts, but it contained no judgment or
sentence.  The packet is accompanied by an affidavit that states that the
documents pertain to an Anthony Petruccelli with the same date of birth as
Appellant Petruccelli.  It contains two pictures of Petruccelli, identifying
marks, and fingerprints that were later identified by the State’s expert
witness as Petruccelli’s fingerprints.  The packet also includes a “complaint
of indictment data” stating that Petruccelli was charged with assault and armed
robbery, and a warrant for commitment stating that Petruccelli was convicted of
armed robbery and assault and is to be committed to ten years’ confinement.  Also,
a Certificate of Parole is included which shows that Petruccelli was paroled by
the Commonwealth of Massachusetts Parole Board.

          When an out-of-state penitentiary
packet has been introduced as evidence of a prior criminal record in the punishment
phase, the State must establish, either by proof or request, that the trial
judge took judicial notice of what our sister state considers sufficient
documentary proof of a final conviction.  See Langston v. State, 776
S.W.2d 586, 587-88 (Tex. Crim. App. 1989).  In this case, the State did not do
so.  Therefore, in the absence of proof of the laws of the Massachusetts, we
will presume that the law is the same as that of Texas.  Id.

          The State must prove beyond a
reasonable doubt prior convictions alleged for the purpose of enhancement of
punishment.  Zimmer v. State, 989 S.W.2d 48, 51 (Tex. App.—San Antonio
1998, pet. ref’d).  Our case law is clear that “before a conviction may be
relied upon for enhancement in a later case, such prior conviction must be
final.”  Beal v. State, 91 S.W.3d 794, 796 (Tex. Crim. App. 2002).  In
order for a conviction to be considered final, a penitentiary packet must
contain a properly certified judgment and sentence.  Langston, 776
S.W.2d at 587-88.  “[W]hen the State offers into evidence a certified copy of a
judgment and sentence, it has made a prima facie case that the conviction
reflected within that judgment and sentence is a final conviction worthy of
respect.”  Jones v. State, 77 S.W.3d 819, 822-23 (Tex. Crim. App.
2002).  A document that is the “functional equivalent of the judgment and
sentence required by Texas law to prove up a valid conviction” may be used in
the absence of a judgment and sentence.  Langston, 776 S.W.2d at 588.  

          A commitment order is considered a
functional equivalent of a judgment and sentence.  See Doby v. State,
454 S.W.2d 411, 413 (Tex. Crim. App. 1970) (holding that despite the absence of
a judgment and sentence, the “recitations of the commitment” document from New
Mexico were sufficient to prove a final prior conviction); Wilson v. State,
15 S.W.3d 544, 555 (Tex. App.—Dallas 1999, pet. ref’d) (a commitment order has
a “similar purpose” as a judgment and sentence).

          The commitment order states the offense
committed and the sentence.  See Francis v. State, 792 S.W.2d 783, 785
(Tex. App.—Houston [14th Dist.] 1990, pet. ref’d) (Louisiana commitment order
showing the offense committed and sentence was sufficient to establish prior
conviction).  The commitment order is accompanied by an affidavit from the
Central Records Supervisor of the Massachusetts Department of Correction stating
that the attached documents are true and accurate copies and giving the
commitment order an indicia of authority.  See Banks v. State, 158
S.W.3d 649, 653 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (commenting on
the court’s inability to find a Texas case holding that a pen packet lacking a
judgment and sentence and devoid of any indicia of authenticity is prima facie
proof of a prior conviction); Johnson v. State, 740 S.W.2d 868, 871
(Tex. App.—Houston [14th Dist.] 1987, pet. ref’d) (holding that New York
certificate of commitment, when accompanied by certification of authenticity,
was sufficient to prove a prior conviction); Williams v. State, 1999
Tex. App. LEXIS 4876, **13-14 (Tex. App.—Houston [14th Dist.] July 1, 1999,
pet. ref’d) (not designated for publication) (holding that certified copies of
records from the Florida Division of Corrections were the functional equivalent
of a judgment and sentence and were sufficient to prove a prior conviction).  Therefore,
we find that the commitment order containing identifying fingerprints,
photographs, and marks, stating the offense committed and the sentence imposed,
and containing an indicia of authenticity is the functional equivalent of a final
conviction.

          Viewing the evidence in the light most
favorable to the verdict, we find that there is legally sufficient evidence to
prove Petruccelli’s prior conviction.  See Cardenas, 30 S.W.3d at
389-90.  Accordingly, we overrule Petruccelli’s second issue.




Conclusion

          Having overruled Petruccelli’s issues,
we affirm his conviction.

 

 

                                                                   FELIPE
REYNA

                                                                   Justice

Before Chief Justice
Gray,

          Justice
Vance, and 

          Justice Reyna

          (Chief
Justice Gray concurring)

Affirmed 

Opinion delivered and
filed August 17, 2005

Publish

[CR25]









    [1]       During
a hearing on the admission of the videotape, Petruccelli's counsel asked that
the tape be published to the jury without sound, and the State agreed, yet the
trial court ruled only that the tape be admitted.  However, it is apparent from
the record that the tape was played with sound because the State's witness was
asked to identify for the jury the voices heard on the videotape.  Furthermore,
when the tape was played for the jury at closing argument, the reporter's
record notes that it was played without the audio portion.  There is no such
indication in the record when the tape was first published.

 





    [2]       In
homicide cases, victim-impact evidence is traditionally defined as
"evidence concerning the effect that the victim's death will have on
others, particularly the victim's family members."  Mathis v. State,
67 S.W.3d 918, 928 (Tex. Crim. App. 2002).





    [3]       See
Wal-Mart Stores, Inc. v. Hoke, No.
14-99-00503-CV, 2001
WL 931658, *13 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (not designated
for publication); Pittsburg Corning Corp. v. Walters, 1 S.W.3d 759,
772-73 (Tex. App.—Corpus Christi 1999, pet. denied); Apache Ready Mix Co.,
Inc. v. Creed, 653 S.W.2d 79, 83-84 (Tex. App.—San Antonio 1983, writ
dism'd).





    [4]       Though
Petruccelli argues that the trial court erred in admitting the prior conviction
because it was not final, we interpret this issue as including the argument
that there is no evidence to support the enhancement allegation.  See Tex. R. App. P. 38.1(e), 38.9.