Richard VELA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–03–102–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 12, 2004.

Rehearing Overruled Oct. 12, 2004.

James R. Lawrence, Corpus Christi, for appellant.

Richard Vela Jr., Sugar Land, pro se.

Joe C. Lockhart, Asst. Dist. Atty., Carlos Valdez, Nueces County Dist. Atty., Corpus Christi, for state.

Before Chief Justice VALDEZ and Justices CASTILLO and BAIRD.[1]

**OPINION**

Opinion by Justice BAIRD.

Appellant was charged by indictment with three counts of sexual assault and one count of aggravated assault. A jury acquitted appellant of the sexual assault offenses alleged in counts I and II but convicted appellant of the sexual assault alleged in count III and the aggravated assault alleged in count IV. The jury assessed punishment at twelve years confinement and a fine of $5,000 on count III, and fourteen years confinement and a fine of $5,000 on count IV. We reverse and remand the judgment of the trial court as to count III and affirm the judgment as to count IV.

## I. Ineffective Assistance of Counsel.

▬ Points of error one, two, and three contend defense counsel was ineffective. The right to the effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, section 10 of the Texas Constitution. The well-known two-prong standard of *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is utilized when reviewing ineffective assistance of counsel claims. The reviewing court must first decide whether trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 684, 104 S.Ct. 2052. If counsel's performance was deficient, the reviewing court must decide whether there is a "reasonable probability" the result of

---

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004)

the trial would have been different but for counsel's deficient performance. *Id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* at 687, 104 S.Ct. 2052; *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim.App.1993); *Boyd v. State*, 811 S.W.2d 105, 109 (Tex.Crim.App.1991).

■ The defendant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim.App.1998). Allegations of ineffective assistance of counsel will be sustained only if they are firmly founded and affirmatively demonstrated in the appellate record. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). When determining the validity of an ineffective assistance of counsel claim, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim.App.1984). This deferential review begins with the strong presumption that counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Appellant has the burden of rebutting this presumption, and generally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*,

77 S.W.3d 828, 833 (Tex.Crim.App.2002); *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999) (trial record generally not sufficient to establish an ineffective assistance of counsel claim).[2]

■ In the instant case, no motion for rehearing was filed. Consequently, no record has been developed to support the claims raised in these three points of error. The record, therefore, does not rebut the strong presumption that counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Jackson*, 877 S.W.2d at 771. Consequently, the first prong of *Strickland* has not been met.

■ Additionally, appellate counsel does not argue that any of the alleged deficient conduct was "sufficient to undermine confidence in the outcome" of appellant's trial. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Consequently, the second prong of *Strickland* has not been met. Accordingly, the first, second, and third points of error are overruled.

## II. EXCLUSION OF EXPERT TESTIMONY.

The fourth point of error contends the trial judge erred by not permitting the testimony of Cheryl Hartzendorf, appellant's proffered expert witness.

### A. Factual Summary.

During its case-in-chief, the State called Sonia Eddleman as an expert witness. Eddleman was the director of the Sexual Assault Nurse Examiner (S.A.N.E.) Program at Doctor's Regional Medical Center. She had been a registered nurse for eigh-

2. An exception to "sound trial strategy" presumption exists when the record clearly confirms that no reasonable trial counsel would have engaged in the complained of conduct or omission. *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex.Crim.App.1992); *Chavez v. State*, 6 S.W.3d 66, 71 (Tex.App.-San Antonio 1999, pet. ref'd); *Weeks v. State*, 894 S.W.2d 390, 392 (Tex.App.-Dallas 1994, no pet.).

teen years and was certified as a S.A.N.E. with the Texas Attorney General's office. She had been recognized as an expert and testified many times prior to appellant's trial. Eddleman testified that she examined the complainant and prepared a report that the complainant had been orally, sexually, and anally assaulted by appellant. Eddleman stated the complainant had a one-and-a-half centimeter "oozing tear" to her anus.[3] The complainant did not exhibit any other genital injuries. However, according to Eddleman this did not indicate that the complainant had not been sexually assaulted because "92 to 95 percent of the time patients that are either consensually sexually active or have been sexually assaulted do not have genital injuries."

At the time of her direct examination, Eddleman had reviewed only the medical report she prepared following her examination of the complainant. However, during Eddleman's cross-examination, defense counsel admitted into evidence the complainant's prior medical records from Christus Spohn Hospital indicating she had rectal pain and tenderness. Eddleman testified the rectal tear was possibly caused by constipation, but was "not something ... commonly seen with diarrhea or constipation."

At the conclusion of the cross-examination, Eddleman was asked to refer to the *Physician's Desk Reference* and tell the jury what conditions Klonopin and Valtrex, two medications prescribed for the complainant, were used to treat. The State objected and a discussion was held outside the jury's presence. During this discussion, defense counsel stated he wanted to ask Eddleman if Valtrex was prescribed for venereal diseases that cause rectal

tears. At this time the following exchange occurred:

TRIAL JUDGE: Well, [Eddleman] just stated to me that as far as she knows there's no connection between a tear and the medication that may be given to a person. Until you have someone who can make that connection, I will sustain the objection.

Do you have anything else.

DEFENSE COUNSEL: May I call an expert witness, Judge?

TRIAL JUDGE: Well, we're here with this witness right now.

DEFENSE COUNSEL: Well, can I call an expert to rebut what she's telling you?

TRIAL JUDGE: You can call any witness that you want, but right now we're with this witness.

Do you have anything else of this witness?

DEFENSE COUNSEL: No, Judge.

To rebut Eddleman's testimony, defense counsel called Cheryl Hartzendorf. Pursuant to Texas Rule of Evidence 705(b), the State requested a hearing outside the jury's presence. TEX.R. EVID. 705(b). At that hearing, Hartzendorf testified she was an R.N., Certified Legal Nurse Consultant. Hartzendorf owned an independent legal nurse consulting business and had spent 400 hours at the Medical Legal Nurse Institute in Houston to be a Certified Legal Nurse Consultant. She had participated in twenty-five to thirty cases, both criminal and civil. She had testified three times previously in civil trials and once in a criminal trial alleging sexual assault and involving DNA evidence. Prior to her testimony Hartzendorf reviewed

3. Eddleman described an oozing tear as "a break in the skin, and oozing gives you the description that it was still bleeding, it was still fresh. It hadn't healed or began that healing process yet."

the medical records of the complainant from both Corpus Christi Medical Center and Christus Spohn Memorial Medical Center, and the D.P.S. analysis of the swabs and hair combing taken by Eddleman from the complainant.

On cross-examination, Hartzendorf stated she volunteered to testify for appellant because "[t]here's no evidence to indicate that this particular person, no sperm, no head hair combings, no vaginal swabs, fingernail swabs, oral smears, vaginal smears, anal smears that—there's no DNA evidence linking this particular—[appellant] to the alleged rape of [the complainant]." Hartzendorf relied upon her general nursing experience to form her opinion. Hartzendorf conceded she had not written any articles for peer review and was not aware of any published articles holding the view that if there is not DNA or physical evidence there is no rape.

During the Rule 705(b) hearing, the State was permitted to recall Eddleman to "challenge" Hartzendorf's qualifications. When asked if she was "aware of any scientific theory that holds to the principle if there is no DNA evidence, if there is no hair evidence, then there is no rape?" Eddleman responded in the negative. At the conclusion of this testimony, the State argued Hartzendorf's testimony should be excluded. Defense counsel argued the testimony was necessary to rebut Eddleman's testimony and to establish there was no link between the complainant's sexual assault, if any, and appellant. The trial judge sustained the objection, and Hartzendorf was not permitted to testify before the jury.

**B. Argument and Analysis.**

To be admissible, expert testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. TEX.R. EVID. 702. The expert may testify in the form of opinion or inference. TEX.R. EVID. 703. We review the decision of the trial judge to admit or exclude expert testimony for an abuse of discretion. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex.Crim.App.2002). Trial judges abuse their discretion by acting without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

Once a particular type of scientific evidence is well established as reliable, a court may take judicial notice of that fact, thereby relieving the proponent of the burden of producing evidence on that question. *Emerson v. State*, 880 S.W.2d 759, 764 (Tex.Crim.App.1994). Clearly, medical testimony in sexual assault cases, whether by a nurse, sexual assault examiner, or physician, is the type of scientific evidence that is well established as reliable. *Gregory v. State*, 56 S.W.3d 164, 179 (Tex.App.-Houston [14th Dist.] 2001 pet. dism'd) (holding that nurse was qualified to testify as expert) (and cases cited therein).

As we read the record and the State's brief, the contention at trial, and again on appeal, and the reason for the trial judge's decision, is that the testimony was not reliable primarily because Hartzendorf had no valid scientific theory to support her opinion, and therefore, was not qualified.[4] Special knowledge which

---

4. In a single sentence, the State further argues: "Moreover, under the criteria applicable to expert testimony based on 'soft' science, the field of expertise must be 'legitimate,' and Appellant failed to demonstrate that the proposed testimony was relevant and reliable."

We summarily reject this argument because the testimony of Eddleman and Hartzendorf dealt with a "hard" as opposed to "soft" science. The Court of Criminal Appeals in *Weatherred v. State*, 15 S.W.3d 540 (Tex.Crim. App.2000), noted the distinction as follows:

qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a combination thereof. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim.App.2000). In fact, a witness may be qualified solely on the basis of practical experience. *Carter v. State*, 5 S.W.3d 316, 319–20 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (citing *Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 598 (3d Cir.1998) (stating witnesses can qualify as experts under Rule 702 on the basis of practical experience alone, and a formal degree, title, or educational speciality is not required)).

In the instant case, Hartzendorf had the requisite training, background and education to qualify as an expert witness. Further, as noted above, she stated she relied upon her general nursing experience to form her opinion. Consequently, we hold she was qualified to testify as an expert witness in the instant case. *Carter*, 5 S.W.3d at 319–20.

The trial judge erred in sustaining the State's "challenge" to Hartzendorf's qualifications in at least three respects. First, since practical experience alone is sufficient to qualify one as an expert, there is necessarily no requirement that the witness have written or read any articles subject to peer review before stating an opinion. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245–46 (5th Cir.2002) (holding lack of literature on subject did not undermine expert's qualifications because trial judge could rely on first-hand observations and professional experience to assess expert's reliability) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist.")). In other words, simply because there is no published article on a particular subject does not mean there is insufficient practical experience to support an opinion on the subject. Common sense tells us this would be particularly true when the expert testifies regarding a negative finding.

Second, we are not aware of any authority permitting the party against whom the expert testimony is offered to use its own expert to challenge the qualifications of the opponent's expert. Were this the rule, the proponent could never establish an expert's qualifications because the opposing expert who had previously testified would necessarily opine that the expert was not qualified—were the proponent's expert qualified, the witnesses would have come to the same conclusion. Rule 705 provides the opponent an opportunity to determine the foundation of the expert's opinion. *Alba v. State*, 905 S.W.2d 581, 588 (Tex. Crim.App.1995). Specifically, Rule 705(b) limits the voir dire of the expert to "the underlying facts or data upon which the opinion is based." *See* Tex.R. Evid. 705(b). Under subsection (c), if the judge determines the "underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible." *See* Tex.R. Evid. 705(c). In the instant case, Hartzendorf based her opinion on the medical records of the complainant, both before and after the alleged assault, and the DPS analysis of the swabs

---

"The 'hard' sciences, areas in which precise measurement, calculation, and prediction are generally possible, include mathematics, physical science, earth science, and life science. The 'soft' sciences, in contrast, are generally thought to include such fields as psychology, economics, political science, anthropology, and sociology. See *The New Columbia Encyclopedia* 2450 (1975)." *See id.* 15 S.W.3d at 542 n. 5.

submitted to its lab. Obviously, this is the type of record relied upon by experts to form an opinion.[5]

 Third, to the extent the trial judge based his decision to exclude Hartzendorf's testimony on the basis that he. personally did not agree with her opinion or did not find her credible was an abuse of discretion. The trial judge as gatekeeper is to determine the reliability, relevancy, and admissibility of scientific evidence. *Hartman v. State*, 946 S.W.2d 60, 63 (Tex. Crim.App.1997). However, the trial judge does not pass on the credibility of the witness or her ultimate opinion. Whether the expert's testimony and/or opinion is credible is the function of the jury. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) (jury exclusive judge of weight to be given testimony). The State's criticism of Hartzendorf's qualifications did not justify the trial court in excluding the testimony. *Muhammad v. State*, 46 S.W.3d 493, 510 (Tex.App.-El Paso 2001, no pet.). In the instant case, as in *Muhammad*, the State's criticisms of Hartzendorf "should have been explored on cross-examination, as affecting the weight to be given [her testimony], not its admissibility." *Id.*

There can be no doubt that the subject of Hartzendorf's opinion was relevant. Just as Eddleman was permitted to testify that the lack of genital injuries did not indicate that the complainant had not been sexually assaulted because "92 to 95 percent of the time patients that are either consensually sexually active or have been sexually assaulted do not have genital injuries," Hartzendorf should have been permitted to testify that no sexual assault

occurred. One party cannot proffer expert testimony and subsequently argue successfully that the testimony was not relevant when the opposing party seeks to offer expert testimony on the same subject which reaches a different conclusion.

For these reasons, we find the trial judge, in excluding Hartzendorf's testimony, acted without reference to any guiding rules and principles. *Montgomery*, 810 S.W.2d at 380. Accordingly, we hold the trial judge abused his discretion in excluding Hartzendorf's testimony.

### C. Harm Analysis.

 Having determined the trial judge erred in excluding Hartzendorf's testimony, we must now determine if appellant was harmed. As a general rule, Rule 44.2(b) of the Texas Rules of Appellate Procedure prescribes the harm analysis for error stemming from the erroneous admission or exclusion of evidence. TEX. R.APP. P. 44.2(b); *Muhammad*, 46 S.W.3d at 509. Under that rule, error that does not affect a substantial right must be disregarded. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). An error that has no influence or only a slight influence on the verdict is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). However, if the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining

---

**5.** As noted above, at the time of her testimony on direct examination, Hartzendorf had seen the report prepared by Eddelman at the Corpus Christi Medical Center, the complainant's medical records from Christus Spohn Memorial Medical Center, and the D.P.S. analysis.

In contrast, at the time of her direct examination, Eddelman had only reviewed her report. This is not to suggest that Eddelman was not qualified, but only to note that Hartzendorf had relied upon more data in forming her opinion.

the jury's verdict. *Webb*, 36 S.W.3d at 182. Neither party has the burden of proof under Rule 44.2(b). *Id*. Rather, the appellate court will examine the record for purposes of determining harm. *Id*.

When examining the appellate record, we should consider the following factors: (1) the evidence admitted, (2) the nature of the evidence supporting the verdict, including whether this evidence was overwhelming; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and, (8) whether the State emphasized the error. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex.Crim.App.2002). We will consider each of these factors in connection with the instant case.

First, we review the evidence admitted at trial. The complainant testified that she was sexually assaulted by appellant orally, vaginally, and anally. Eddleman corroborated the vaginal penetration despite the lack of genital injuries because "92 to 95 percent of the time patients that are either consensually sexually active or have been sexually assaulted do not have genital injuries." Eddleman's testimony regarding the oozing tear supported the State's theory of anal penetration.

Second, we review the nature of the evidence supporting the verdict, including whether this evidence was overwhelming. The jury acquitted appellant of the allegations in count I and count II which alleged appellant sexually assaulted the complainant orally and vaginally. However, the jury convicted appellant of sexual assault by anal penetration. Therefore, we cannot say the evidence was overwhelming.

Third, we analyze the character of the alleged error and how it might be considered in connection with other evidence in the case. This we feel is the critical factor in our analysis. As stated above, Hartzendorf's testimony was both reliable and relevant. Her testimony contradicted the complainant and Eddleman's testimony, and corroborated appellant's testimony. Hartzendorf's testimony, therefore, was of great potential benefit to appellant. Consequently, this factor militates heavily in favor of finding harm.

Fourth, we consider the jury instructions. The jury instructions do not mention expert testimony. Accordingly, this is not a factor in our analysis.

Fifth, we review the State's theory and any defensive theories. As can be seen above, the theories were totally opposite of one another. Eddleman was used convincingly to support the State's theory while Hartzendorf was not permitted to testify and undermine that theory. Consequently, this factor militates heavily in favor of finding harm.

Sixth, we analyze the closing arguments. Defense counsel argued there was no evidence of oral or vaginal penetration. He did not mention Eddleman or the oozing tear. The State stressed the testimony of Eddleman and the oozing tear to corroborate the complainant's testimony and each theory of sexual assault. Consequently, this factor militates in favor of finding harm.

Seventh, we consider the voir dire. The trial judge identified Eddleman as a witness and introduced her to the venire. During the State's voir dire, the prosecutor mentioned that Eddleman would be testifying to "medical evidence." No veniremember indicated a problem considering medical evidence as credible. From this exchange, we conclude each veniremember actually selected to serve on the jury was capable of giving weight to Eddleman's testimony. Similarly, we con-

clude those jurors would have probably given some weight to Hartzendorf's testimony had they been permitted to hear it. Consequently, this factor militates in favor of finding harm.

Eighth, we consider whether the State emphasized the error. The error was not emphasized by the State.

When the *Motilla* factors are considered, we cannot say the error in excluding Hartzendorf's testimony had no influence or only a slight influence on the verdict related to count III of the indictment alleging sexual assault by anal penetration. *Johnson*, 967 S.W.2d at 417. Consequently, we must treat the error as harmful. *Webb*, 36 S.W.3d at 182. However, this finding of harm is limited to count III which alleged sexual assault by anal penetration. The error was harmless as to count IV which alleged aggravated assault. There is no indication in the record that Hartzendorf would have testified about the neck injuries.[6] Consequently, we hold the error had no or only slight influence on the allegations of aggravated assault in count IV of the indictment. Accordingly, the error was harmless in relation to count IV. We overrule appellant's fourth issue.

## III. Aggravated Assault.

The fifth and final point of error contends the evidence is legally insufficient to support the jury's verdict. To evaluate the legal sufficiency of the evidence, we view all the record evidence and reasonable inferences therefrom in the light most favorable to the prosecution to determine whether a rational jury could have made the challenged finding beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979); *Teer v. State*, 923 S.W.2d 11, 17 (Tex.Crim.App.1996). The jury is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight of particular evidence. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

A person commits simple assault by intentionally, knowingly, or recklessly causing bodily injury to another. Tex. Pen.Code Ann. § 22.01(a)(1) (Vernon Supp.2004). A person commits aggravated assault by committing assault and using or exhibiting a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). Count IV of the indictment alleged appellant's hands constituted a deadly weapon. Body parts, such as hands and knees, may be deadly weapons based on their manner of use or intended use and their capacity to produce death or serious bodily injury. *Turner v. State*, 664 S.W.2d 86, 90 (Tex.Crim.App. [Panel Op.] 1983); *Gillum v. State*, 888 S.W.2d 281, 288 (Tex.App.-El Paso 1994, pet. ref'd). To determine whether something is a deadly weapon, the jury may consider all the surrounding facts, including the defendant's words and whether the victim feared death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim.App.1983); *English v. State*, 647 S.W.2d 667, 669 (Tex.Crim.App.1983); *Denham v. State*, 574 S.W.2d 129, 131 (Tex.Crim.App.1978); *Hernandez v. State*, 649 S.W.2d 720, 722 (Tex.App.-Amarillo 1983, no pet.). The State does not have to prove that the complainant actually sustained serious bodily injuries. *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex.App.-Austin 1998, no pet.); *Clark v. State*, 886 S.W.2d 844, 845 (Tex.App.-Eastland 1994, no pet.). The State must only prove that the hands were *capable* of causing serious

---

**6.** Although Eddelman briefly mentioned the abrasions to the complainant's neck, the subject was first broached by defense counsel on cross-examination and was negligible.

bodily injury in the way they were used or intended to be used. *Hill v. State*, 913 S.W.2d 581, 584 (Tex.Crim.App.1996); *Jefferson*, 974 S.W.2d at 892; *Gillum*, 888 S.W.2d at 288.

The complainant testified appellant choked her several times during the criminal episode, and at one point "I started blacking out and couldn't breathe and thought 'My God, he's going to kill me.'" Peace Officer Nancy Lee testified that the use of hands around a person's neck to choke that person constitutes the use of a deadly weapon. Based upon this testimony, we hold the jury could have rationally concluded that appellant's hands, in the manner of their use or intended use were capable of causing serious bodily injury. The fifth point of error is overruled.

### IV. Pro Se Appellate Brief.

 Appellant has filed a *pro se* brief alleging three supplemental points of error. Appellants are not allowed "hybrid representation" on appeal. In other words, an appellant and his appellate counsel cannot present independent points of error to an appellate court. *Patrick v. State*, 906 S.W.2d 481, 498 (Tex.Crim.App. 1995) (appellant's supplemental brief presented nothing for review). Accordingly, these supplemental points are overruled.

The judgment of the trial court as to count III is reversed and remanded, and the judgment of the trial court as to count IV is affirmed.