IN THE COURT OF CRIMINAL 
APPEALS
OF TEXAS





NO. PD-1388-04


 

RICHARD VELA, JR., Appellant

v.

THE STATE OF 
TEXAS




ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRTEENTH COURT OF APPEALS
NUECES COUNTY



Keasler, 
J., delivered 
the 
opinion for a unanimous Court. 
Cochran, J., filed a 
concurring opinion in which Johnson, J., 
joined.

O P I N I O N

The trial judge 
excluded the testimony of Richard Vela, Jr.'s witness, Cheryl Hartzendorf, who 
would have testified that if there is no physical evidence, then no rape 
occurred. The court of appeals ruled that Hartzendorf should have been allowed 
to testify because her experience qualified her as an expert. 
(1) Because we hold that the court of appeals failed to 
conduct a proper analysis, we remand this case to the court of 
appeals.
Facts and Procedural History
 At Richard Vela's 
trial for three counts of sexual assault and one count of aggravated assault, 
the State called Sonia Eddleman, the sexual assault nurse examiner who examined 
the victim after the rape. Eddleman stated that the examination revealed no 
injuries to the victim's mouth or genitals but that there was an "oozing tear" 
in the victim's anus and bruising on her body. Based on her examination, 
Eddleman claimed the victim had been sexually assaulted.
Vela later called 
Cheryl Hartzendorf, a certified legal nurse consultant, and the State requested 
a hearing outside the jury's presence. Before trial, Hartzendorf had reviewed 
the victim's hospital records and the Department of Public Safety lab report 
containing the results of Eddleman's examination. Hartzendorf intended to 
testify that, in her opinion, because there was no DNA or physical evidence 
linking Vela to the alleged rape, no sexual assault occurred. She further stated 
that her opinion was based on her general nursing experience and that she had 
not written, nor was aware of, any published articles supporting that theory. 
The trial judge allowed the State to recall Eddleman to rebut Hartzendorf's 
testimony. The State then challenged Hartzendorf's credentials and methodology, 
and the trial judge sustained the State's objection. The jury later acquitted 
Vela on two of the sexual-assault counts but 
convicted him of the sexual assault alleged in count three and the aggravated 
assault charge.
The 
Thirteenth Court of Appeals determined that Hartzendorf was a qualified expert 
witness, 
(2) and after performing a harm analysis, the court found that her 
testimony could have had a significant effect on the outcome of the 
sexual-assault conviction. 
(3) Asserting that "the trial judge, in excluding Hartzendorf's 
testimony, acted without reference to any guiding rules and principles," the 
court of appeals held that the trial judge abused his discretion in excluding 
Hartzendorf's testimony. 
(4) As a result, the court of appeals reversed Vela's sexual-assault 
conviction but affirmed the aggravated assault conviction because Hartzendorf 
did not intend to testify about the alleged choking of the victim. (5)
We granted review 
to determine whether the Thirteenth Court of Appeals erred in holding that the 
trial judge abused his discretion in not permitting an expert witness's 
testimony to the effect that where there is no physical evidence, there is no 
rape.
Expert Testimony
The 
Texas Rules of Evidence set out three separate conditions regarding 
admissibility of expert testimony. First, Rule 104(a) requires that 
"[p]reliminary questions concerning the qualification of a person to be a 
witness . . . be determined by the court . . . ." 
(6) Second, Rule 702 states: "If scientific, technical, or other 
specialized knowledge will assist the trier of fact to understand the evidence 
or to determine a fact in issue, a witness qualified as an expert by knowledge, 
skill, experience, training, or education may testify thereto in the form of an 
opinion or otherwise." 
(7) And third, Rules 401 and 402 render testimony admissible only if 
it "tend[s] to make the existence of any fact that is of consequence to the 
determination of the action more probable or less probable than it would be 
without the evidence." (8)
These rules 
require a trial judge to make three separate inquiries, which must all be met 
before admitting expert testimony: "(1) the witness qualifies as an expert by 
reason of his knowledge, skill, experience, training, or education; (2) the 
subject matter of the testimony is an appropriate one for expert testimony; and 
(3) admitting the expert testimony will actually assist the fact-finder in 
deciding the case." 
(9) These conditions are commonly referred to as (1) qualification, 
(2) reliability, and (3) relevance. Only the first two conditions are at issue 
in this case, and we consider each in turn.
A. Qualifications of an Expert 
Witness
In 
Rodgers v. State, we noted that an appellate court should consider 
three criteria when determining whether a trial court abused its discretion in 
evaluating a witness's qualifications as an expert: (1) "is the field of 
expertise complex?" 
(10); (2) "how conclusive is the expert's opinion?" 
(11); and (3) "how central is the area of expertise to the resolution 
of the lawsuit?" (12)
Qualification is distinct from reliability and relevance 
and, therefore, should be evaluated independently. Although this Court has 
touched on the qualification analysis in prior cases, we have never discussed it 
in depth. We therefore look to Texas Supreme Court opinions for additional 
guidance. As that Court recognized in Broders v. Heise, the mere fact 
that a witness "'possesse[s] knowledge and skill not possessed by people 
generally . . .' does not in and of itself mean that such expertise will assist 
the trier of fact regarding the issue before the court." 
(13) And because a witness will not always qualify as an expert merely 
by virtue of a general background, 
(14) qualification is a two-step inquiry. A witness must first have a 
sufficient background in a particular field, but a trial judge must then 
determine whether that background "goes to the very matter on which [the 
witness] is to give an opinion." (15)
The 
Texas Supreme Court examined the second step of the qualification inquiry in 
Broders. The Court considered "whether the trial court abused its 
discretion in excluding the testimony of an emergency physician that the conduct 
of the three defendant emergency physicians and the defendant hospital was a 
cause in fact of a patient's death." 
(16) The proponents argued that "merely because [the witness was] a 
medical doctor," the witness was qualified to testify about "all medical 
matters." 
(17) Rejecting that argument, the Court explained that "there is no 
validity . . . to the notion that every licensed medical doctor should be 
automatically qualified to testify as an expert on every medical question." 
(18) If a medical degree carried automatic expert qualification in all 
medical matters, a trial judge could no longer fulfill his gatekeeping duty and 
"ensur[e] that those who purport to be experts truly have expertise concerning 
the actual subject about which they are offering an opinion." (19)
The 
Court explained that the proponent must "establish that the expert has 
'knowledge, skill, experience, training, or education' regarding the specific 
issue before the court which would qualify the expert to give an opinion on that 
particular subject." 
(20) Given the facts in Broders, the Court determined that 
the proponents "simply did not establish that [the witness's] opinions on cause 
in fact would have risen above mere speculation to offer genuine assistance to 
the jury." (21)
In 
Christopherson v. Allied-Signal Corporation, the Fifth Circuit 
acknowledged the same problem with medical experts:
[A]lthough credentials can be significant, they alone 
are not necessarily determinative. The questions, for example, do not stop if 
the expert has an M.D. degree. That alone is not enough to qualify him to give 
an opinion on every conceivable medical question. This is because the inquiry 
must be into actual qualification . . . . (22)
Similarly, in Gammill v. Jack Williams Chevrolet, 
Inc., the Texas Supreme Court again addressed the second part of the 
qualification inquiry and examined the qualifications of witnesses to testify as 
experts in an automobile-related products-liability suit. 
(23) Examining the background of one witness, the Court concluded that 
the witness "was shown to be experienced in designing and testing fighter planes 
and missiles, but he was not shown to have any training or experience in the 
design or manufacture of automobiles or their relevant components." 
(24) Because "his only experience with automobiles at all was while 
working part-time as a mechanic doing general repairs," the witness did not 
"have any expertise that would qualify him to testify about design defects in a 
vehicle's accelerator or restraint system . . . [or] as to the cause of [the 
victim's] injuries or death." 
(25) Notwithstanding his extensive background, the Court held that the 
witness was not qualified to render an opinion on the specific questions 
regarding automobiles that were at issue in that case. (26)
"The focus, then, 
is on the 'fit' between the subject matter at issue and the expert's familiarity 
therewith, and not on a comparison of the expert's title or specialty with that 
of the defendant or a competing expert." 
(27) We discussed the "fit" requirement in Jordan v. State 
and explained that the issue under the reliability and relevance conditions "is 
whether the expert's testimony took into account enough of the pertinent facts 
to be of assistance to the trier of fact on a fact in issue." 
(28) But "fit" is not just a component of reliability and 
relevance--it is also a component of the qualification inquiry. Just as the 
subject matter of an expert's testimony should be tailored to the facts of a 
case, the expert's background must be tailored to the specific area of expertise 
in which the expert desires to testify.
The court of 
appeals failed to do an adequate inquiry into Hartzendorf's qualifications to 
testify about physical evidence of rape. Rather, the court simply referenced 
Hartzendorf's education and experience as a nurse and deemed that general 
background sufficient to qualify her as an expert witness. So the court made no 
meaningful inquiry into Hartzendorf's qualifications in that specific area of 
expertise.
B. Reliability of an Expert's 
Testimony
The court of 
appeals claimed that "the reason for the trial judge's decision . . . [was] that 
the testimony was not reliable primarily because Hartzendorf had no scientific 
theory to support her opinion, and therefore, was not qualified." 
(29) This assertion illustrates the court's substitution of 
"reliability" for "qualification." While qualification deals with the witness's 
background and experience, reliability focuses on the subject matter of the 
witness's testimony. The court of appeals muddled the qualification and 
reliability analyses and, therefore, failed to consider the reliability of 
Hartzendorf's testimony at all.
Texas Rule of Evidence 705(c) governs the reliability of 
expert testimony and states that "[i]f the court determines that the underlying 
facts or data do not provide a sufficient basis for the expert's opinion under 
Rule 702 or 703, the opinion is inadmissible." 
(30) "[R]eliability depends upon whether the evidence has its basis in 
sound scientific methodology. This demands a certain technical showing." 
(31) And that showing gives a trial judge the opportunity to "weed out 
testimony pertaining to so-called 'junk science.'" 
(32) Thus, just because "'junk science' or otherwise inadequately 
tested scientific theories might be shown to relate to the facts of a case," it 
will not always have a sufficiently reliable basis. (33)
Unlike qualification, the reliability condition has been 
thoroughly discussed in prior opinions. In Kelly v. State, we explained 
that scientific evidence must meet three criteria to be reliable: "(a) the 
underlying scientific theory must be valid; (b) the technique applying the 
theory must be valid; and (c) the technique must have been properly applied on 
the occasion in question." (34) We then outlined a list 
of non-exclusive factors that could affect a trial judge's decision on 
reliability:
(1) the extent to 
which the underlying scientific theory and technique are accepted as valid by 
the relevant scientific community, if such a community can be ascertained; (2) 
the qualifications of the experts testifying; (3) the existence of literature 
supporting or rejecting the underlying scientific theory and technique; (4) the 
potential rate of error of the technique; (5) the availability of other experts 
to test and evaluate the technique; (6) the clarity with which the underlying 
scientific theory and technique can be explained to the court; and (7) the 
experience and skill of the person(s) who applied the technique on the occasion 
in question. 
(35)
And 
even if the traditional Kelly reliability factors do not perfectly 
apply to particular testimony, the proponent is not excused from proving its 
reliability. As the Texas Supreme Court recognized, "The court in discharging 
its duty as gatekeeper must determine how the reliability of particular 
testimony is to be assessed." 
(36) The reliability inquiry is, thus, a flexible one. In some cases, 
the reliability of scientific knowledge will be at issue; in others, "the 
relevant reliability concerns may focus upon personal knowledge or 
experience." 
(37) But the proponent must establish some foundation for the 
reliability of an expert's opinion. 
(38) "Experience alone may provide a sufficient basis for an expert's 
testimony in some cases, but it cannot do so in every case." (39)
"Without more than credentials and a subjective opinion, 
an expert's testimony that 'it is so' is not admissible." 
(40) In Viterbo v. Dow Chemical Company, the Fifth Circuit 
excluded an expert's testimony because it was "no more than Viterbo's testimony 
dressed up and sanctified as the opinion of an expert." 
(41) The district court had examined the data on which Viterbo's 
expert's opinion was based and found it to be lacking in reliability and 
probative value. 
(42) The court held that the expert "lacked objectivity in that he 
diagnosed Viterbo's condition . . . based only on the patient's oral history and 
without the benefit of medical tests." 
(43) The expert also "had no scientific literature to support his 
position and the tests which [the expert] performed did not establish a causal 
link between Viterbo's symptoms and [the drug manufactured by the 
defendant]." (44)
The 
Fifth Circuit noted that the dispute was not over qualification, because the 
expert was properly qualified. 
(45) Rather, "[t]he dispute center[ed] on the source and basis of the 
expert opinion . . . ." 
(46) The court acknowledged that the basis of an expert's opinion may 
sometimes be "of such little weight that the jury should not be permitted to 
receive that opinion." 
(47) But the court also recognized that even though trial judges may 
give experts "wide latitude" in selecting their sources, the judge must still 
evaluate those sources' reliability. (48)
In 
this case, the court of appeals asserted that if "a particular type of 
scientific evidence is well established as reliable," the proponent may avoid 
the burden of producing supportive evidence by asking that the trial court take 
judicial notice. 
(49) And the court claimed that "[c]learly, medical testimony in 
sexual assault cases, whether by a nurse, sexual assault examiner, or physician, 
is the type of scientific evidence that is well established as reliable." 
(50) The court of appeals, therefore, failed to make any inquiry into 
the reliability of Hartzendorf's theory. Instead, the court of appeals deemed 
Hartzendorf qualified to testify as an expert and then simply asserted that the 
trial court erred in excluding her testimony because medical testimony is "well 
established as reliable." (51)
C. Analysis
The court of 
appeals performed an incorrect analysis of Hartzendorf's qualifications as an 
expert witness and failed to perform any analysis of the reliability of the 
subject matter of her testimony. The court of appeals gave three reasons why the 
trial court erred in sustaining the State's objection to Hartzendorf's 
qualifications. 
(52) First, the court stated that "since practical experience alone is 
sufficient to qualify one as an expert, there is necessarily no requirement that 
the witness have written or read any articles subject to peer review before 
stating an opinion." 
(53) While perhaps true in some circumstances, such a blanket 
assertion is inaccurate. To qualify a witness as an expert by practical 
experience alone, a trial judge must fully explore that witness's experience in 
the particular field in which the witness intends to give an expert opinion. A 
cursory reference to the witness's credentials is insufficient to support expert 
status. Moreover, the State's argument at trial regarding Hartzendorf's lack of 
published articles referred to the reliability of her scientific theory, not to 
her qualifications as an expert witness. Therefore, the court of appeals 
misunderstood the State's argument.
Next, the court 
of appeals stated that "we are not aware of any authority permitting the party 
against whom the expert testimony is offered to use its own expert to challenge 
the qualifications of the opponent's expert." 
(54) Even if this was an 
accurate statement, the State called Eddleman to rebut the reliability of 
Hartzendorf's testimony, not to challenge her qualifications.
Finally, the 
court of appeals stated that "to the extent the trial judge based his decision 
to exclude Hartzendorf's testimony on the basis that he personally did not agree 
with her opinion or did not find her credible was an abuse of discretion." 
(55) But credibility and reliability are not the same. A jury should 
evaluate credibility, but unreliable evidence should never make it to the jury. 
As the court of appeals below acknowledged, "[t]he trial judge as gatekeeper is 
to determine the reliability, relevancy, and admissibility of scientific 
evidence." 
(56) And acting as "gatekeeper," the trial judge found Hartzendorf's 
scientific theory unreliable and, therefore, refused to admit her 
testimony.
We recognize that 
the "focus, of course, must be solely on principles and methodology, not on the 
conclusions that they generate." 
(57) But we also agree that a trial judge need not "admit 
opinion evidence which is connected to existing data only by the ipse 
dixit of the expert. A court may conclude that there is simply too great an 
analytical gap between the data and the opinion proffered." 
(58) Here, the court of appeals did not give proper deference to the 
trial judge's ruling. "[B]ecause the possible spectrum of education, skill, and 
training is so wide, a trial court has great discretion in determining whether a 
witness possesses sufficient qualifications to assist the jury as an expert on a 
specific topic in a particular case." 
(59) And when a trial judge determines that a witness is or is not 
qualified to testify as an expert, "appellate courts rarely disturb the trial 
court's determination." (60)
Conclusion
Because the court 
of appeals improperly evaluated Hartzendorf's qualifications, failed to evaluate 
the reliability of her proposed testimony, and failed to give proper deference 
to the trial judge, we vacate the judgment of the court of appeals and remand 
this case to the court of appeals for proceedings consistent with this 
opinion.
DATE DELIVERED: 
December 13, 2006
PUBLISH 
1. Vela v. State, 
159 S.W.3d 172, 179 (Tex. App.--Corpus Christi 2004). 
2. Id. 
3. Id. at 182. 
4. Id. at 180. 
5. Id. at 182. 
6. Tex. R. Evid. 104(a). 
7. Tex. R. Evid. 702. 
8. Tex. R. Evid. 401, 402. 
9. Rodgers v. State, 
No. PD-0645-05, 2006 Tex. Crim. App. LEXIS 852, at *4 (Tex. Crim. App. May 3, 
2006). 
10. Id. at *6. 
11. Id. 
12. Id. at *7. 
13. 924 S.W.2d 148, 153 (Tex. 
1996). 
14. Gammill v. Jack 
Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998) ("Just as not 
every physician is qualified to testify as an expert in every medical 
malpractice case, not every mechanical engineer is qualified to testify as an 
expert in every products liability case."). 
15. Broders, 924 
S.W.2d at 153 (citing Christopherson v. 
Allied-Signal Corp., 939 F.2d 1106 (5th Cir. 1991)). 
16. Id. 
17. Id. at 152. 
18. Id. 
19. Id. at 152-53. 
20. Id. at 153. 
21. Id. 
22. Christopherson, 
939 F.2d at 1112-13. 
23. 972 S.W.2d at 715. 
24. Id. at 719. 
25. Id. 
26. Id. 
27. Broders, 924 
S.W.2d at 153 (quoting Nunley v. Kloehn, 
888 F. Supp. 1483, 1488 (E.D. Wis. 1995)). 
28. 928 S.W.2d 550, 556 (Tex. 
Crim. App. 1996). 
29. Vela, 159 S.W.3d 
at 178. 
30. Tex. R. Evid. 705(c). 
31. Jordan, 928 
S.W.2d at 555. 
32. Id. 
33. Id. 
34. 824 S.W.2d 568, 573 (Tex. 
Crim. App. 1992). 
35. Id. 
36. Gammill, 972 
S.W.2d at 726. 
37. Kumho Tire Co. v. 
Carmichael, 526 U.S. 137, 150 (1999). 
38. Gammill, 972 
S.W.2d at 726. 
39. Id. 
40. 826 F.2d 420, 424 (5th 
Cir. 1987). 
41. Id. 
42. Id. at 421. 
43. Id. at 422. 
44. Id. 
45. Id. 
46. Id. 
47. Id. 
48. Id. 
49. Vela, 159 S.W.3d 
at 178. 
50. Id. 
51. Id. 
52. Id. at 179. 
53. Id. 
54. Id. 
55. Id. at 180. 
56. Id. (citing 
Hartman 
v. State, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997)). 
57. Daubert v. Merrell Dow 
Pharms., Inc., 509 U.S. 579, 595 (1993). 
58. Gen. Elec. Co. v. 
Joiner, 522 U.S. 136, 146 (1997). 
59. Rodgers, 2006 
Tex. Crim. App. LEXIS 852, at *5. 
60. Id. at *5 
n.9.