**Richard VELA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–03–00102–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 21, 2008.

Audrey Mullert Vicknair, Corpus Christi, for Appellant.

Carlos Valdez, Nueces County Dist. Atty., Joe C. Lockhart, Asst. Dist. Atty., for State.

Before Chief Justice VALDEZ and Justices GARZA and BAIRD.[1]

## OPINION ON REMAND

Opinion by Justice CHARLES F. BAIRD (Retired).

On direct appeal, we reversed the judgment of the trial court related to Count III of the indictment, which alleged that appellant had nonconsensual anal intercourse with the complainant, on grounds that the trial court abused its discretion in failing to admit the expert testimony of Cheryl Hartzendorf. *Vela v. State*, 159 S.W.3d 172, 179 (Tex.App.-Corpus Christi 2004), *rev'd*, 209 S.W.3d 128, 135 (Tex.Crim.App. 2006). The Texas Court of Criminal Appeals granted the State's petition for discretionary review and determined that we failed to conduct a proper analysis related to the trial judge's determination of the reliability of Hartzendorf's testimony. *Vela*, 209 S.W.3d at 135. The Court of Criminal Appeals remanded the case to this court for further proceedings. *Id.* at 136. We now affirm the judgment of the trial court.

## I. The Court of Criminal Appeals' Decision.

■ Trial judges are required to make three separate inquiries before admitting expert testimony: (1) is the witness qualified as an expert by reason of his knowledge, skill, experience, training, or education; (2) is the subject matter of the testimony appropriate for expert testimony; and (3) will admitting the expert testi-

mony assist the fact-finder in deciding the case. *Id.* at 131. As the court of criminal appeals stated, "[T]hese conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id.* at 131. The court of criminal appeals held that we "muddled the qualification and reliability analyses and, therefore, failed to consider the reliability of Hartzendorf's testimony at all," and that we failed to give proper deference to the trial judge. In that light, we will reconsider our earlier analysis. *Id.* at 133, 136.

## II. The State's Expert Witness.

During its case-in-chief, the State called Sonia Eddleman as an expert witness. Eddleman was the director of the Sexual Assault Nurse Examiner (S.A.N.E.) Program at Doctor's Regional Medical Center. She had been a registered nurse for eighteen years and was certified as a S.A.N.E. with the Texas Attorney General's office. She had been recognized as an expert and testified many times prior to appellant's trial. Eddleman testified that she examined the complainant and prepared a report that appellant had orally, sexually, and anally assaulted the complainant. Eddleman stated the complainant had a one-and-a-half centimeter "oozing tear" to her anus. The complainant did not exhibit any other genital injuries. However, according to Eddleman this did not indicate that the complainant had not been sexually assaulted because "92 to 95 percent of the time patients that are either consensually sexually active or have been sexually assaulted do not have genital injuries."

## III. The Defense's Expert Witness.

■ To rebut Eddleman's testimony, defense counsel called Cheryl Hartzendorf.

1. Retired Justice Charles F. Baird was assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

Pursuant to Texas Rule of Evidence 705(b), the State requested a hearing outside the jury's presence. *See* TEX.R. EVID. 705(b). At that hearing, Hartzendorf testified she was an R.N. and a Certified Legal Nurse Consultant. Hartzendorf owned an independent legal nurse consulting business and had spent 400 hours at the Medical Legal Nurse Institute in Houston to be a Certified Legal Nurse Consultant. She had participated in twenty-five to thirty cases, both criminal and civil. She had testified three times previously in civil trials and once in a criminal trial alleging sexual assault and involving DNA evidence.

Prior to her testimony, Hartzendorf reviewed the medical records of the complainant from both Corpus Christi Medical Center and Christus Spohn Memorial Medical Center, and the D.P.S. analysis of the swabs and hair combing taken by Eddleman from the complainant. After offering this proof on her qualifications, the following exchange occurred:

DEFENSE COUNSEL: And did you note any evidence that was collected in the records for Doctors Regional? I guess what I'm referring to is the S.A.N.E. exam.

HARTZENDORF: Yes, sir. There was evidence collected by the S.A.N.E. nurse, the Sexual Assault Nurse Examiner. What was collected were wet mounts for vaginal, anal and oral swabs, head hair combings, vaginal swabs, fingernail swabs, oral smear, vaginal smear and anal smears.

DEFENSE COUNSEL: And was, to your knowledge, was there any sperm found?

HARTZENDORF: No. sir, there was none.

DEFENSE COUNSEL: Now, is it possible that after two days if someone was raped or even if they had just had regular sex, is it possible for sperm to still be here after two days?

HARTZENDORF: Yes, sir.

DEFENSE COUNSEL: It could possibly still be present?

HARTZENDORF: Yes, sir.

DEFENSE COUNSEL: Okay. What about the testing under the fingernails, did you get any results from that?

HARTZENDORF: I reviewed the D.P.S. record of the results of the swabs, the fingernail swabs, the vaginal swabs, the hair combing and it did not list any substantive evidence.

DEFENSE COUNSEL: Judge, I believe that I've qualified her for—for an expert and she has—she is familiar with the case to testify in this trial.

During the State's cross-examination of Hartzendorf the following exchange occurred:

HARTZENDORF: There—There is no evidence to indicate that this particular person, no sperm, no head hair combings, no vaginal swabs, fingernail swabs, oral smears, vaginal smears that—there is no DNA evidence linking this particular—[appellant] to the alleged rape of [the complainant].

THE STATE: So you're saying if there's no DNA evidence, there's no hairs, there's no rape, is that what you're saying?

HARTZENDORF: In this case, yes. I think it was consensual.

THE STATE: I'm saying as a general—I'm saying as a general principle, you're here to testify as an expert to rely on general principles and you're expounding a principle that says that if there's no DNA evidence, no hair evidence, there's no rape, is that what you're going to testify here today to?

HARTZENDORF: In regards to this case, sir?

THE STATE: Yes.

HARTZENDORF: Yes.

THE STATE: What—What factual basis, what literature do you rely on in forming this opinion?

HARTZENDORF: On my general nursing experience, sir.

THE STATE: Have you written any articles regarding your opinions for peer review to expound on this issue?

HARTZENDORF: No, sir.

THE STATE: Okay. Do you think it would be wise to write an article expounding this view so it could be reviewed by peers and so they could review your work?

HARTZENDORF: Wouldn't be a bad idea.

THE STATE: But you have not done that?

HARTZENDORF: No, sir.

THE STATE: And you never testified in regards to this theory before, is that correct?

HARTZENDORF: No, sir.

\* \* \* \* \*

THE STATE: As far as you know, is there any peer review articles that have been published that expound the view that say if there's no DNA evidence, if there's no physical evidence, then there's no rape?

HARTZENDORF: There could be possibly. I'm not aware of them.

THE STATE: I need to know of one that has been published. Are you aware of one that has been published?

HARTZENDORF: No.

\* \* \* \* \*

THE STATE: And as far as you know this is not a widely accepted belief among persons in your area to be promoting here today, is that correct?

HARTZENDORF: No.

The State recalled Eddleman to the stand and the following exchange occurred:

THE STATE: [Eddleman], you've heard the testimony form [Hartzendorf] in this particular case?

EDDLEMAN: Yes, sir.

THE STATE: Are you aware of any scientific theory that holds to the principle if there is no DNA evidence, if there is no hair evidence, then there is no rape?

EDDLEMAN: I'm not aware of any.

THE STATE: Okay. Are you aware of any peer review articles that have been published on this scientific theory, expounded by [Hartzendorf]?

EDDLEMAN: No, sir.

THE STATE: Are you aware of anyone else who has proclaimed this particular theory in court?

EDDLEMAN: I have not heard of this theory, no, sir.

THE STATE: Okay. And you are—as a S.A.N.E. nurse, you're required to keep up with all changes and noted documentations and peer review articles, as well?

EDDLEMAN: Absolutely, as well as being peer reviewed myself.

THE STATE: Okay. And to your knowledge, has anyone ever expounded this theory that the Defense is portraying here today?

EDDLEMAN: Not that I'm aware of.

Finally, the following colloquy occurred between the trial judge and defense counsel:

TRIAL JUDGE: But if I understood [Hartzendorf's] testimony correctly, she's here for the purpose of telling this jury *her opinion that if there's no*

*DNA evidence, then there's no sexual assault.*

DEFENSE COUNSEL: No, Judge. I asked her about that right now. She—

TRIAL JUDGE: That's what she's—

DEFENSE COUNSEL: Right that's what she testified to, but she must have understood it.

TRIAL JUDGE: You didn't ask her any questions about the other examinations that were done by Ms. Eddleman.

DEFENSE COUNSEL: No, Your Honor. I was just trying to qualify her as an expert.

TRIAL JUDGE: All right. I'm going to sustain the objection.

In light of the above colloquies, we hold the trial judge held Hartzendorf's testimony was not admissible because "her opinion that if there is no DNA evidence then there's no sexual assault," was not reliable. Scientific evidence must meet three criteria to be reliable: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. *Id.* at 133. In the instant case there was no showing that Hartzendorf's underlying scientific theory was valid. Hartzendorf conceded as much when questioned by the State. This was confirmed by Eddleman. Therefore, in light of the record before us, we cannot conclude that the trial judge abused his discretion in excluding Hartzendorf's testimony as an expert witness. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000) (trial judge's ruling on admissibility of expert testimony reviewed under an abuse of discretion standard). Accordingly, the judg-

ment as to Count III of the indictment is affirmed.