NUMBER 13-03-00102-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


RICHARD VELA, JR., Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 105th District Court of Nueces County, Texas.

 


OPINION ON REMAND


Before Chief Justice Valdez and Justices Garza and Baird (1)
 

Opinion by Justice Charles F. Baird



 On direct appeal, we reversed the judgment of the trial court related to Count III of
the indictment, which alleged that appellant had nonconsensual anal intercourse with the
complainant, on grounds that the trial court abused its discretion in failing to admit the
expert testimony of Cheryl Hartzendorf. Vela v. State, 159 S.W.3d 172, 179 (Tex.
App.--Corpus Christi 2004), rev'd, 209 S.W.3d 209 S.W.3d 128, 135 (Tex. Crim. App.
2006). The Texas Court of Criminal Appeals granted the State's petition for discretionary
review and determined that we failed to conduct a proper analysis related to the trial judge's
determination of the reliability of Hartzendorf's testimony. Vela, 209 S.W.3d at 135. The
Court of Criminal Appeals remanded the case to this court for further proceedings. Id. at
136. We now affirm the judgment of the trial court.

I. The Court of Criminal Appeals' Decision.

Trial judges are required to make three separate inquiries before admitting expert
testimony: (1) is the witness qualified as an expert by reason of his knowledge, skill,
experience, training, or education; (2) is the subject matter of the testimony appropriate for
expert testimony; and (3) will admitting the expert testimony assist the fact-finder in
deciding the case. Id. at 131. As the court of criminal appeals stated, "[T]hese conditions
are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." Id. at 131. 
The court of criminal appeals held that we "muddled the qualification and reliability analyses
and, therefore, failed to consider the reliability of Hartzendorf's testimony at all," and that
we failed to give proper deference to the trial judge. In that light, we will reconsider our
earlier analysis. Id. at 133, 136.

II. The State's Expert Witness.

During its case-in-chief, the State called Sonia Eddleman as an expert witness.
Eddleman was the director of the Sexual Assault Nurse Examiner (S.A.N.E.) Program at
Doctor's Regional Medical Center. She had been a registered nurse for eighteen years and
was certified as a S.A.N.E. with the Texas Attorney General's office. She had been
recognized as an expert and testified many times prior to appellant's trial. Eddleman
testified that she examined the complainant and prepared a report that appellant had orally,
sexually, and anally assaulted the complainant. Eddleman stated the complainant had a
one-and-a-half centimeter "oozing tear" to her anus. The complainant did not exhibit any
other genital injuries. However, according to Eddleman this did not indicate that the
complainant had not been sexually assaulted because "92 to 95 percent of the time
patients that are either consensually sexually active or have been sexually assaulted do
not have genital injuries."

III. The Defense's Expert Witness.

To rebut Eddleman's testimony, defense counsel called Cheryl Hartzendorf.
Pursuant to Texas Rule of Evidence 705(b), the State requested a hearing outside the
jury's presence. See Tex. R. Evid. 705(b). At that hearing, Hartzendorf testified she was
an R.N. and a Certified Legal Nurse Consultant. Hartzendorf owned an independent legal
nurse consulting business and had spent 400 hours at the Medical Legal Nurse Institute
in Houston to be a Certified Legal Nurse Consultant. She had participated in twenty-five
to thirty cases, both criminal and civil. She had testified three times previously in civil trials
and once in a criminal trial alleging sexual assault and involving DNA evidence. 

Prior to her testimony, Hartzendorf reviewed the medical records of the complainant
from both Corpus Christi Medical Center and Christus Spohn Memorial Medical Center, and
the D.P.S. analysis of the swabs and hair combing taken by Eddleman from the
complainant. After offering this proof on her qualifications, the following exchange
occurred:

DEFENSE COUNSEL: And did you note any evidence that was
collected in the records for Doctors
Regional? I guess what I'm referring to is
the S.A.N.E. exam.


HARTZENDORF: Yes, sir. There was evidence collected by
the S.A.N.E. nurse, the Sexual Assault
Nurse Examiner. What was collected
were wet mounts for vaginal, anal and
oral swabs, head hair combings, vaginal
swabs, fingernail swabs, oral smear,
vaginal smear and anal smears.


DEFENSE COUNSEL: And was, to your knowledge, was there
any sperm found?


HARTZENDORF: No. sir, there was none.


DEFENSE COUNSEL: Now, is it possible that after two days if
someone was raped or even if they had
just had regular sex, is it possible for
sperm to still be here after two days?


HARTZENDORF: Yes, sir.


DEFENSE COUNSEL: It could possibly still be present?


HARTZENDORF: Yes, sir.


DEFENSE COUNSEL: Okay. What about the testing under the
fingernails, did you get any results from
that?


HARTZENDORF: I reviewed the D.P.S. record of the results
of the swabs, the fingernail swabs, the
vaginal swabs, the hair combing and it did
not list any substantive evidence.


DEFENSE COUNSEL: Judge, I believe that I've qualified her for
- for an expert and she has - she is
familiar with the case to testify in this trial.


During the State's cross-examination of Hartzendorf the following exchange occurred:


HARTZENDORF: There -There is no evidence to indicate that this
particular person, no sperm, no head hair
combings, no vaginal swabs, fingernail swabs,
oral smears, vaginal smears that - there is no
DNA evidence linking this particular - [appellant]
to the alleged rape of [the complainant].


THE STATE: So you're saying if there's no DNA evidence,
there's no hairs, there's no rape, is that what
you're saying?


HARTZENDORF: In this case, yes. I think it was consensual.


THE STATE: I'm saying as a general - I'm saying as a general
principle, you're here to testify as an expert to
rely on general principles and you're expounding
a principle that says that if there's no DNA
evidence, no hair evidence, there's no rape, is
that what you're going to testify here today to?


HARTZENDORF: In regards to this case, sir?


THE STATE: Yes.


HARTZENDORF: Yes.


THE STATE: What - What factual basis, what literature do you
rely on in forming this opinion?


HARTZENDORF: On my general nursing experience, sir.


THE STATE: Have you written any articles regarding your
opinions for peer review to expound on this
issue?


HARTZENDORF: No, sir.


THE STATE: Okay. Do you think it would be wise to write an
article expounding this view so it could be
reviewed by peers and so they could review your
work?


HARTZENDORF: Wouldn't be a bad idea.


THE STATE: But you have not done that?


HARTZENDORF: No, sir.


THE STATE: And you never testified in regards to this theory
before, is that correct?


HARTZENDORF: No, sir.


*****


THE STATE: As far as you know, is there any peer review
articles that have been published that expound
the view that say if there's no DNA evidence, if
there's no physical evidence, then there's no
rape?


HARTZENDORF: There could be possibly. I'm not aware of them.


THE STATE: I need to know of one that has been published. 
Are you aware of one that has been published?


HARTZENDORF: No.


*****


THE STATE: And as far as you know this is not a widely
accepted belief among persons in your area to
be promoting here today, is that correct?


HARTZENDORF: No.


 The State recalled Eddleman to the stand and the following exchange occurred:

THE STATE: [Eddleman], you've heard the testimony form
[Hartzendorf] in this particular case?


EDDLEMAN: Yes, sir.


THE STATE: Are you aware of any scientific theory that holds
to the principle if there is no DNA evidence, if
there is no hair evidence, then there is no rape?


EDDLEMAN: I'm not aware of any.


THE STATE: Okay. Are you aware of any peer review articles
that have been published on this scientific
theory, expounded by [Hartzendorf]?


EDDLEMAN: No, sir.


THE STATE: Are you aware of anyone else who has
proclaimed this particular theory in court?


EDDLEMAN: I have not heard of this theory, no, sir.


THE STATE: Okay. And you are - as a S.A.N.E. nurse, you're
required to keep up with all changes and noted
documentations and peer review articles, as
well?


EDDLEMAN: Absolutely, as well as being peer reviewed
myself.


THE STATE: Okay. And to your knowledge, has anyone ever
expounded this theory that the Defense is
portraying here today?


EDDLEMAN: Not that I'm aware of.


 Finally, the following colloquy occurred between the trial judge and defense counsel:


TRIAL JUDGE: But if I understood [Hartzendorf's]
testimony correctly, she's here for the
purpose of telling this jury her opinion that
if there's no DNA evidence, then there's
no sexual assault.


DEFENSE COUNSEL: No, Judge. I asked her about that right
now. She -


TRIAL JUDGE: That's what she's -


DEFENSE COUNSEL: Right that's what she testified to, but she
must have understood it.


TRIAL JUDGE: You didn't ask her any questions about
the other examinations that were done by
Ms. Eddleman.


DEFENSE COUNSEL: No, Your Honor. I was just trying to
qualify her as an expert.


TRIAL JUDGE: All right. I'm going to sustain the
objection.


 In light of the above colloquies, we hold the trial judge held Hartzendorf's testimony
was not admissible because "her opinion that if there is no DNA evidence then there's no
sexual assault," was not reliable. Scientific evidence must meet three criteria to be
reliable: (a) the underlying scientific theory must be valid; (b) the technique applying the
theory must be valid; and (c) the technique must have been properly applied on the
occasion in question. Id. at 133. In the instant case there was no showing that
Hartzendorf's underlying scientific theory was valid. Hartzendorf conceded as much when
questioned by the State. This was confirmed by Eddleman. Therefore, in light of the
record before us, we cannot conclude that the trial judge abused his discretion in excluding
Hartzendorf's testimony as an expert witness. Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000) (trial judge's ruling on admissibility of expert testimony reviewed
under an abuse of discretion standard). Accordingly, the judgment as to Count III of the
indictment is affirmed.


 CHARLES F. BAIRD

 Justice



Publish.

Tex. R. App. P. 47.2(b). 


Opinion delivered and filed 

this the 21st day of February, 2008.

1. Retired Justice Charles F. Baird was assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to the government code. See Tex. Gov't Code Ann. § 74.003 (Vernon 2005).